GARY M. RESTAINO
United States Attorney
District of Arizona
KATHERINE R. BRANCH
Assistant U.S. Attorney
Arizona State Bar No. 025128
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4449
Telephone:  (602) 514-7500
Civil Fax:  (602) 514-7760
Main Fax: (602) 514-7693
Email: Katherine.Branch@usdoj.gov
*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| F.R., on his own behalf and on behalf of his minor child A.A.,<br><br>          Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>          Defendant. | No. CV-21-00339-PHX-DLR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendant United States of America submits this reply in support of its motion to dismiss this action for lack of subject matter jurisdiction (Doc. 30). Congress has not waived sovereign immunity for the types of claims asserted in this action, and those claims are jurisdictionally barred.

Plaintiffs rely on Judge Bolton's decisions in *A.P.F. v United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020) and *C.M. v. United States*, No. 2:19-cv-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. March 30, 2020), and on the decision in *Nunez Euceda v. United States*, No. 2:20-cv-10793-VAP-GJSx, 2021 WL 4895748 (C.D. Cal. April 27, 2021) in arguing that the Court should reject the Government's arguments supporting the motion to dismiss. This Court is not bound by those decisions. Defendant respectfully submits that the better reading of the law aligns with the decision of a third federal judge in Texas, *Peña Arita v.*

*United States*, 470 F. Supp. 3d 663, 691-92 (S.D. Tex. 2020), who found that decisions by DHS that resulted in the separation of family members fall within the discretionary function exception ("DFE") to the Federal Tort Claims Act.

**A.    Plaintiffs' Claims Are Barred by the Discretionary Function Exception.**

       **1.    Defendant Satisfies the First Prong of the DFE Test.**

Plaintiffs allege that after illegally crossing the U.S.-Mexico border into Arizona in early March 2018, prior to the Department of Justice issuing its Zero-Tolerance Policy on April 6, 2018, F.R. and his minor son, A.A., were forcibly separated. Plaintiffs allege that A.A. was transferred to a shelter in Texas, while F.R. was prosecuted for illegal entry, detained in a secure adult detention facility after completing his criminal sentence, and then removed from the United States without A.A. While Plaintiffs attempt to reframe these allegations to avoid application of the DFE in this case, as to the conduct pled in the Complaint, the Government maintained discretion to act at all relevant times from the Plaintiffs' entry across the United States border through initial detention, separation, and continued detention. Plaintiffs' Opposition fails to rebut this discretion by demonstrating any mandatory policy removing this discretion.

       **i.    Plaintiffs Do Not Rebut that the Government's Decisions on Detention and Separation Involved Discretionary Judgments.**

Plaintiffs have not shown that Government officials lacked discretion on the key decision points at issue. Further, Plaintiffs have not done what is required to overcome Defendant's DFE defense: identify (1) a statute, regulation, or policy setting forth a course of conduct that is both mandatory and specific, and (2) conduct that violates this mandatory and specific statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009).

Plaintiffs do not refute that the Government possesses the express statutory authority to detain noncitizens after they illegally enter the country (*see* 8 U.S.C. §§ 1225, 1226(a)), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1). These decisions indisputably involve discretion. *See Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020) (recognizing

1  that in making decisions about investigation and detention, "DHS officers must make all the
2  kinds of classic judgment calls the discretionary function exception was meant to exempt
3  from tort liability").

4       Plaintiffs also do not contest that the Government had the discretion to house F.R. in
5  a secure adult immigration detention facility. *See* 8 U.S.C. § 1231(g)(1) (Government has
6  authority to "arrange for appropriate places of detention for aliens detained pending removal
7  or a decision on removal"); *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440
8  (9th Cir. 1986) ("Congress has placed the responsibility of determining where aliens are
9  detained within the discretion of the [Secretary of Homeland Security]."). Nor do Plaintiffs
10  contest that the Government had the discretion to prosecute F.R., for illegal entry in violation
11  of 8 U.S.C. § 1325(a)(1), and thus detain him for criminal proceedings.[1]

12       Plaintiffs do not rebut the Government's discretion in making prosecutorial and
13  detention decisions about noncitizens who violated the law when they crossed the border in
14  between ports of entry. Although the separation at issue in this case occurred before the
15  issuance of the Zero-Tolerance Policy, decisions concerning prosecution and detention are
16  quintessential discretionary policy decisions subject to the DFE. *Cf. Peña Arita*, 470 F. Supp.
17  3d at 686-87 (holding that the Zero-Tolerance policy provided for "clearly protected
18  discretionary decisions" that resulted in family separations and that its use of the phrase "to
19  the extent practicable" also indicated "essentially discretionary judgment"). Moreover, the
20  Flores Agreement – which Plaintiffs do not address in their Opposition – does not require
21  release of an adult parent, compel release of a child to a parent that remains in custody,
22  mandate that parents be housed with a child, or prescribe that parents are entitled to be housed
23  with their children in immigration detention. *Flores v. Lynch*, 828 F.3d 898, 906, 908 (9th
24  Cir. 2016); *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-4409-MAT, 2018

25
26  _____

27  [1] Plaintiffs also do not contest that F.R. was subject to prosecution under 8 U.S.C. § 1326 for
    illegal re-entry given that he had previously been ordered removed.  That he was charged
28  with the lesser offense of illegal entry under 8 U.S.C. § 1325 as a matter of prosecutorial
    discretion is of no moment.  F.R. was subject to prosecution for felony re-entry.

WL 315759, at \*9, \*14-15 (W.D. Tex. Jan. 5, 2018). Further, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR"), which is statutorily charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status" (*see* 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C)), utilizes its discretion to place unaccompanied children "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). Plaintiffs challenge none of the Government's discretionary decision-making.

### ii. Plaintiffs Cannot Circumvent the DFE By Simply Alleging a Constitutional Violation.

Plaintiffs primarily argue that violations of constitutional mandates categorically preclude application of the FTCA's discretionary function exception. Doc. 36 at 9-12. This argument fails for several reasons.

As a threshold matter, negligence cannot violate the Due Process Clause of the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32 (1986); *Campbell v. Chavez*, 402 F. Supp. 2d 1101, 1102 (D. Ariz. 2005) ("Mere negligence does not amount to a constitutional deprivation."); *Gomez v. Arizona*, No. CV-16-04228, 2017 WL 5517449, \*4 n.1 (D. Ariz. Nov. 17, 2017) (rejecting due process claim, because "[m]ere negligence is insufficient—'the Constitution does not guarantee due care on the part of state officials.'") (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998)). Thus, any argument that constitutional violations can defeat a DFE defense is inapplicable to Plaintiffs' negligence claims.

In any event, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct. Instead, a plaintiff must show that the Government official's discretion was limited by a specific, clearly established directive, accompanied by plausible assertions that the specific directive was violated. In *Butz v. Economou*, 438 U.S. 478 (1978), the Supreme Court recognized that immunity for discretionary acts would not be vitiated simply because alleged conduct might later be held unconstitutional. *Id*. at 506-07 (acknowledging need to protect officials exercising discretion subject to "clearly established constitutional limits"). In *Butz*, the Supreme Court held that officials sued for violations of

constitutional rights were entitled to qualified, but not absolute immunity. *Id*. at 507. The Court explained that were it otherwise, as relevant to the case at bar, "no compensation would be available from the Government, for the Tort Claims Act prohibits recovery for injuries stemming from discretionary acts, even when that discretion has been abused." *Id*. at 505. *Butz* and subsequent decisions leave no doubt that conduct that violates the Constitution may constitute the type of abuse of discretion that falls within the scope of the DFE.

Since *Butz*, the Supreme Court has expressly held that Government officials who exercise discretionary functions are, under certain circumstances, entitled to qualified immunity in damages suits for violating the Constitution while exercising their discretion. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Court summarized this immunity as striking a balance between two competing interests and, ultimately, turning on the "clearly established law" at the time the official actions were taken. *Id*. at 1866 (citations omitted). Thus, the Supreme Court has long recognized that conduct may be "discretionary" even if it later is determined to have violated the Constitution.

Nevertheless, Plaintiffs' Opposition incorrectly asserts that the "clearly established" standard does not apply to FTCA suits.  Doc. 36 at 12-13. On the contrary, several courts have used the "clearly established" standard when assessing whether the FTCA's discretionary function exception is applicable. For example, in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), the Third Circuit concluded that the defendant CBP officers were entitled to qualified immunity with respect to the plaintiffs' *Bivens* claims because, even if their search of the plaintiffs' cruise ship cabin had violated the Fourth Amendment, the plaintiffs' right to be free from such a search was not "clearly established" as of the date the search was executed. *See id.* at 362-63. Having concluded that the officers did not violate the plaintiffs' clearly established rights under the Fourth Amendment, the Court went on to hold that the DFE barred plaintiffs' FTCA claims. *See id.* at 364 ("Because . . . the CBP officers did not violate clearly established constitutional rights, the FTCA claims also fail" under the DFE.). Similarly, in *McElroy v. United States*, 861 F. Supp. 585 (W.D. Tex. 1994), the district court concluded that the DFE barred the plaintiff's FTCA claims even though he

alleged that the actions of federal agents violated the Fourth Amendment. *See id.* at 593 ("[T]he statutory or constitutional mandate that eliminates discretion must be specific and intelligible so that the officer knows or should know he loses discretion when the particular circumstances arise which the mandate controls.); *id.* n.15 ("This requirement is not unlike the *Harlow* criteria for qualified immunity in constitutional tort cases, *i.e.*, that the officers must violate a clearly established constitutional right."). Likewise, in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), the court assessed the applicability of the DFE to bar a plaintiff's FTCA claim and held that the DFE did not apply to conduct that the court had previously found constituted "a clear violation of due process." *Id.* at 101-02 (finding Government did not possess discretion to withhold exculpatory information).

The question then becomes whether a constitutional right was "clearly established" in the specific context of separation of parents and children who were apprehended together after crossing the border between ports of entry in March 2018. Plaintiffs argue that the substantive due process right to family integrity applies to the separations that occurred under the Zero-Tolerance Policy. Doc. 36 at 11. In support of this contention, Plaintiffs rely on the decisions of three district court judges: (1) the June 6, 2018 and June 26, 2018 decisions in the *Ms. L.* litigation (*Ms. L. v. U.S. Immigr. & Customs Enf't*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018) ("*Ms. L I*"); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018) ("*Ms. L II*"); (2) the July 19, 2018 decision in *Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't*, 319 F. Supp.3d 491 (D.D.C. 2018); and (3) the July 13, 2018 decision in *J.S.R. by and through J.S.G. v. Sessions*, 330 F. Supp. 3d 731 (D. Conn. 2018). As an initial matter, decisions of district judges do not demonstrate that a right is "clearly established." *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) (decisions of a federal district court judge are not binding precedent in either a different judicial district, the same judicial district, or even on the same judge in a different case). In any event, all of the judicial decisions relied upon by Plaintiffs were rendered *after* the occurrence of the conduct that forms the basis for Plaintiffs' claims, and are therefore irrelevant to the analysis of whether the rights at issue were "clearly established."

1        Plaintiffs' other arguments seeking to avoid application of the "clearly established

2    law" standard are similarly unpersuasive. First, Plaintiffs argue that "[t]he Government is

3    asking this Court to break new ground" by holding "either that the Government's separation

4    of Plaintiff families was constitutional or that the DFE applies notwithstanding the likely

5    unconstitutionality of that conduct." Doc. 36 at 12. Plaintiffs cite to what they describe as

6    the "uniform weight of authority in this Circuit" that their allegations plausibly allege a

7    constitutional violation. *Id.* (citing *C.M.*, *A.P.F.*, and *Nunez Escueda*). As with the authority

8    cited above, however, these decisions are neither binding precedent nor relevant in that they

9    were issued after the occurrence of the alleged tortious conduct from which Plaintiffs' FTCA

10    claims arise.

11        Second, Plaintiffs argue that the "clearly established" standard, even if it applied,

12    should have no specificity requirement. Doc. 36 at 12-13. But the Ninth Circuit itself has

13    reserved the question of what level of specificity is necessary before a constitutional

14    provision will preclude the exercise of discretion by a Government official. *Nurse v. United*

15    *States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (expressly declining to decide "the level of

16    specificity with which a constitutional proscription must be articulated in order to remove

17    the discretion of the actor"). In *Fazaga v. FBI*, 965 F.3d 1015 (9th Cir. 2020), the Court

18    suggested that the same level of specificity is required regardless of whether a federal

19    constitutional or statutory directive is at issue. *Id*. at 1065 (deferring issue of the DFE's

20    applicability to district court, which must determine whether "any federal constitutional or

21    statutory directives" specifically prescribed a nondiscretionary course of action so that "the

22    FTCA claims may be able to proceed").

23        Finally, Plaintiffs rely on *Galvin v. Hay*, 374 F.3d 945 (9th Cir. 2004), to support their

24    argument that the DFE does not apply where plaintiffs allege the Government violated their

25    constitutional rights, even if the relevant constitutional rights were not clearly established at

26    the time of the alleged conduct. Doc. 36 at 13. In *Galvin*, the plaintiffs alleged constitutional

27    torts under *Bivens* and false arrest under the FTCA. 374 F.3d at 743. Although the court in

28    *Galvin* stated that the DFE did not apply to one example of unconstitutional conduct, which

the court elsewhere found was not clearly established, the court did so without any analysis of the proper standard for that conduct – and the court then dismissed the FTCA claims on different grounds. 374 F.3d at 758. The court simply quoted from *Nurse* for the general proposition that "[t]he Constitution can limit the discretion of federal officials such that FTCA's discretionary function will not apply" and from *United States Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988), for the general premise that "[f]ederal officials do not possess discretion to violate constitutional rights." 374 F.3d at 758. Notably, however, for the second discrete constitutional violation at issue in that case – the denial of a march permit – the court applied the correct standard, upholding dismissal of plaintiffs' FTCA claim because "the defendants' permit denial was not a violation of *clearly established law*, the officers 'had reasonable cause to believe the arrest was lawful.' Cal. Pen. Code § 847(b)(1)." *Id.* at 758 (emphasis added).

      **2.**      **Defendant Satisfies the Second Prong of the DFE Test Because the Decision to Detain Plaintiffs Separately Was Susceptible to Policy Considerations.**

      Plaintiffs argue that their separation was not based on policy considerations, but that is not so. To begin, Plaintiffs contend that there must be a link between their separations and a specific policy objective. Doc. 36 at 15 (Defendant "does not name a single policy objective that was served by the forcible and prolonged separation of Plaintiffs."); *see also id.* (the government does not "clearly identify[] which policy objective Plaintiffs' separation purportedly served"). But as reconfirmed recently by the Ninth Circuit in *Lam v. United States*, 979 F.3d 665 (9th Cir. 2020), the test is whether the Government's actions "were *susceptible* to policy analysis." *Id.* at 674-75 (emphasis in original); *see also GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002) ("The decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis.") (emphasis in original)). Plaintiffs do not address this critical distinction.

      Plaintiffs also do not discuss the various policies identified by Defendant in its opening memorandum. *See* Doc. 30 at 14-17 (describing discretionary policy judgments relating to prosecution, placement and detention of noncitizen adults and minors). Plaintiffs

dismiss the Government's policy considerations relating to prosecution and detention of noncitizens illegally crossing the border, contending that "prosecutorial and detention decisions" are "not the tortious conduct challenged here" and that family separation is the only challenged conduct. Doc. 36 at 15. But the separation of F.R. and A.A. occurred prior to implementation of the Zero Tolerance Policy, *see* Doc. 1 at ¶ 28 (recognizing that Plaintiffs entered prior to institution of the Zero Tolerance Policy), and the separation was a result of the Government's discretionary decisions to: 1) refer F.R. for prosecution for unlawful re-entry; 2) prosecute F.R. for unlawful entry, which required his transfer to criminal custody thereby rendering him unavailable to provide care for A.A. as A.A. could not be held in criminal custody, thus making A.A. an unaccompanied child; and, 3) detain F.R. in secure adult immigration detention, where A.A. could not be held. Accordingly, the Government's decisions regarding whether to prosecute noncitizens for violations of criminal immigration statutes and where to detain noncitizens pending immigration proceedings are inextricably linked with the separation of the Plaintiffs.[2] Those decisions are quintessential discretionary judgments susceptible to policy considerations – as, of course, are the decisions of this Administration repudiating and reversing the policies of which Plaintiffs complain. *See Peña Arita*, 470 F. Supp. 3d at 686-87 (implementation of policies resulting in separations are discretionary conduct grounded in social, economic, and political policy that courts cannot second-guess).

### 3.    Plaintiffs' Allegations Concerning Conditions of Confinement Should be Dismissed for Lack of Jurisdiction.

Plaintiffs bring negligence claims related to their allegations that the Government did not provide F.R. with sufficient information about A.A.'s placement and did not facilitate sufficiently frequent communication between F.R. and A.A. *See, e.g.*, Doc. 1 ¶¶ 38-41.

---

[2] Plaintiffs' efforts to exclude "detention" from the tortious conduct at issue is undermined by their designation as "parties" to this lawsuit "HHS employees  . . . responsible for supervising and managing the *detention* of children the government classifies as unaccompanied, including at facilities where Plaintiff children were detained while separated from their parents." Doc. 1 ¶ 15 (emphasis added).

1   Courts have repeatedly held that claims based on acts or omissions relating to conditions of
2   confinement are barred by the DFE because they involve discretionary decisions susceptible
3   to policy considerations. *See* Doc. 36 at 17-18 (collecting cases).

4          In particular, the amount of information provided to F.R., and his ability to
5   communicate with A.A. by telephone, are the result of the Government's discretionary
6   decision to confine him in criminal custody and adult immigration detention facilities. The
7   Government's decisions concerning how much and when to furnish information to detainees,
8   as well as when to permit phone use, are likewise discretionary decisions susceptible to
9   policy considerations, and, thus fall within the DFE. *See Washington v. Reno*, 35 F.3d 1093,
10  1100 (6th Cir. 1994) (holding that detainee's right to telephone access is "subject to rational
11  limitations in the face of legitimate security interests") (quoting *Strandberg v. City of Helena*,
12  791 F.2d 744, 747 (9th Cir. 1986)); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d
13  552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter
14  committed to its discretion that will not be second-guessed through an FTCA claim."). These
15  claims should be dismissed for lack of jurisdiction.

16  **B.     Plaintiffs' Claims Relating to the Decision to Detain Them Separately Are
17          Barred by the FTCA's Exception for Actions Taken While Reasonably
          Executing Law.**

18         Plaintiffs argue that the Government was not executing a statute or regulation when
19  it separated them. On the contrary, the Trafficking Victims Protection Reauthorization Act
20  of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), required the Government to transfer A.A. to
21  ORR custody within 72 hours after determining that he was "unaccompanied."

22         As an initial matter, the determination that A.A. was "unaccompanied" within the
23  meaning of the TVPRA is a decision covered by the DFE. *See* 6 U.S.C. § 279(g)(2). Whether
24  a parent is "available to provide care and physical custody" is a policy question vested in
25  federal officials. *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal
26  agencies are afforded discretion under the statutory scheme when classifying juveniles as
27  unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir.
28  2016). Here, F.R. was prosecuted and then housed in adult immigration detention after

serving his criminal sentence. In this circumstance, the DFE applies to the officials' determination that A.A. should be deemed unaccompanied and transferred to the custody of ORR. *See Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279, 287 (3d Cir. 1995) (holding that a decision was covered by the DFE when it "necessarily reflects the decisionmaker's judgment that it is more desirable to make a decision based on the currently available information than to wait for more complete data or more confirmation of the existing data."). Once the discretionary decision was made that A.A. was "unaccompanied," the TVPRA required that he be transferred to the care and physical custody of ORR while F.R. was prosecuted and detained.

**C.    Plaintiffs' Claims Are Not Actionable Since There Is No Private Person Analogue.**

Plaintiffs' legal claims uniquely arise out of the exercise of federal statutory authority that only the Government possesses. Accordingly, the challenged conduct is that for which a private person could never be sued. This is especially true when, as here, the statutory authority being exercised pertains to enforcement of federal immigration laws – namely, those relating to whether and where to detain noncitizens pending immigration proceedings. *See Ryan v. U.S. Immigration & Customs Enf't*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign."). F.R. does not dispute that he was lawfully held in criminal custody or secure adult immigration detention pending immigration proceedings, and does not challenge those decisions. Thus, Plaintiffs' claims are essentially a challenge to *where* and *with whom* noncitizens are detained, and whether, when, and with whom to remove noncitizens. Such decisions are made pursuant to federal statutory authority and are in the sole province of the federal government; there is no private person counterpart. *See* Doc. 30 at 23 (collecting cases).

The cases cited by Plaintiffs to suggest that Arizona law provides for a private analogue to the conduct in this case (*see* Doc. 36 at 21, n.24) do not support Plaintiffs' argument. None of those cases involved a Government actor exercising statutory authority to separate parent and child, or the type of tortious conduct that Plaintiffs challenge in this

case. *See Pankratz v. Willis*, 744 P. 2d 1182, 1184 (Ariz. Ct. App. 1987) (plaintiff-father initiating suit relating to ex-spouse disappearing with their child); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *10–12 (D. Ariz. July 10, 2018) (allowing claim relating to agents' interrogation methods); *Dobek v. Wal-Mart Stores, Inc.*, No. CIV 03-297-TUC-FRZ, 2007 WL 2069832, at *4 (D. Ariz. July 17, 2007) (recognizing loss of consortium claims for parents and children but providing no facts about the underlying claims); *Est. of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *2 (D. Ariz. Mar. 10, 2020) (claim relating to activities in detention as opposed to any type of separation).

**D.     Plaintiffs' Claims Are Impermissible Direct Liability or Systemic Tort Claims.**

Plaintiffs' allegations concern purportedly unconstitutional actions by the Government writ large, not actions by individuals Government employees. Under well-established law, the United States has not waived its sovereign immunity for constitutional tort claims, *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994), and under the principles of *Lee* and *Adams*, Plaintiffs' allegations are too vague and conclusory to hold Defendant liable under the FTCA for the actions of any individual federal employees. *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020); *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005).

**E.     Conclusion.**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

RESPECTFULLY SUBMITTED this 29th day of March, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/*Katherine R. Branch*
KATHERINE R. BRANCH
Assistant United States Attorney
*Attorneys for Defendant*