Kathleen E. Brody (026331)
kathy@mscclaw.com
Molly Brizgys (29216)
molly@mscclaw.com
MITHCELL | STEIN | CAREY | CHAPMAN, PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone: (602) 358-0293
Facsimile: (602) 358-0291

Peter Rukin (SBN 178336)*
prukin@rukinhyland.com
Jessica Riggin (SBN 281712)*
jriggin@rukinhyland.com
Valerie Brender (SBN 298224)*
vbrender@rukinhyland.com
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

(*Admitted Pro hac vice)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| F.R., on his own behalf and on behalf of his minor child, A.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-21-00339-PHX-DLR <br><br> **JOINT CASE MANAGEMENT REPORT** |

Pursuant to the Court's Order of February 7, 2022 (Dkt. 31) and Federal Rule of Civil Procedure 26(f), on April 14, 2022, the parties met and conferred via telephone concerning the items listed in the Court's Order and Rule 26(f). The parties respectfully submit this Joint Proposed Case Management Report.

**1.    Parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report**

The following counsel attended the Rule 26(f) meeting on behalf of Plaintiffs:

    Valerie Brender

    Molly Brizgys

The following counsel attended the Rule 26(f) meeting on behalf of Defendant:

    Katherine Branch

**2.    Statement of the nature of the case**

<u>Plaintiffs' Statement</u>

This action seeks damages for a family forcibly separated by the United States. The separation was made pursuant to an unconstitutional policy developed by high-ranking government officials to inflict harm and instill terror on migrant families, in an effort to deter others from seeking refuge in the United States.

Plaintiff F.R. is a father who came to the United States in early March of 2018 with his then six-year-old child, A.A. F.R. and A.A. were forcibly separated by federal officials while detained at federal immigration detention facilities in Arizona.

Following their separation, the government sent the A.A. to a children's shelter in Texas, while F.R. remained in Arizona. During the time that F.R. and A.A. were separated, F.R. was provided only limited information about A.A.'s location and safety and afforded a once-a-week call to A.A. Both F.R. and A.A. cried throughout these calls. During his time at the children's shelter, A.A. was sometimes locked in a room by himself, apart from the other children, as punishment. F.R. was deported to Honduras

without A.A. In total, F.R. and A.A. remained separated for approximately 100 days until A.A. was finally sent back to Honduras.

The significant public record concerning the family separation policy demonstrates that this policy was intentionally created and developed by high-ranking government officials, including senior White House officials, cabinet-level government officials, and heads of federal agencies. Numerous government officers from myriad offices within at least three federal agencies and four subcomponent agencies were involved in the policy's implementation.

Plaintiffs suffered, and will continue to suffer, substantial physical, mental, and emotional harm as a result of the government's actions. They assert three causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680: (1) intentional infliction of emotional distress ("IIED"); (2) negligence; and (3) loss of child's consortium.

Defendant's Statement

In June 2014, Plaintiff F.R. illegally entered the United States near Falfurrias, Texas, was encountered by U.S. Border Patrol Agents, was issued an expedited order of removal, and was removed from the United States.

On March 1, 2018, Plaintiff F.R. illegally entered the United States near San Luis, Arizona, this time with his minor child, A.A. Shortly thereafter, F.R. and A.A. were encountered by U.S. Border Patrol Agents. Because Plaintiff F.R. had already been removed from the United States, he was referred for prosecution for illegal re-entry (8 U.S.C. § 1326). Plaintiff was subsequently charged with and pled guilty to illegal entry (8 U.S.C. § 1325) and was sentenced to five days in prison.

When F.R. was referred for prosecution, he was transferred from the Yuma Border Patrol Station to the custody of the United States Marshals Service ("USMS") for his appearance at the United States District Court in his criminal case and remained in the custody of the USMS while he served his criminal sentence. Thereafter, F.R. was

transferred to a secure detention facility to await removal based on his reinstated order of removal. Upon F.R.'s transfer to the USMS, he was no longer able to provide care and physical custody of A.A., who was when designated an unaccompanied minor pursuant to 6 U.S.C. § 279(g)(2) and was transferred to the custody of the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") as required by the Trafficking Victims Protection Reauthorization Act of 2008, 8 U.S.C. § 1232(b)(3). A.A. was issued a notice to appear, and voluntarily departed the United States on July 9, 2018, at the conclusion of his immigration case. While in ORR's custody, A.A. was placed with a foster family in El Paso, Texas, and was regularly in contact with his mother in Honduras and his father in Arizona.

The separation of F.R. and A.A. occurred prior to the enactment of the "Zero-Tolerance Policy." It is Defendant's position that the Court lacks subject-matter jurisdiction over Plaintiffs' claims because the decisions at issue fall within the discretionary function and due care exceptions of the Federal Tort Claims Act, because there is no private person analogue, and because there is no cause of action for a "systemic tort."

**3.    Description of the principal factual and legal disputes in the case**

Plaintiffs' Statement

As described above, Plaintiffs' claims arise under the FTCA. Plaintiffs anticipate legal and factual disputes regarding the following:

- Whether Defendant intended its Family Separation Policy to cause harm;
- Whether Defendant's separation of F.R. and A.A. violated the U.S. Constitution;
- Whether Defendant withheld information about A.A. from F.R while they were separated, and the reasons for withholding this information;
- Whether A.A. was abused while in Defendant's custody;
- Whether F.R. was mistreated while in Defendant's custody;

- The reasons that F.R. was repatriated without A.A.
- Whether Defendant's actions were extreme and outrageous with the intent to cause, or a reckless disregard of the probability of causing Plaintiffs to suffer severe emotional distress;
- Whether F.R. and A.A. actually suffered severe emotional distress;
- Whether federal officials had a duty to Plaintiffs to act with ordinary care and prudence;
- Whether federal officials had non-discretionary duties, including those imposed by the Constitution;
- Whether A.A. has suffered severe, permanent, and disabling injuries;
- Whether A.A.'s injuries substantially interfere with his capacity to interact with F.R. in a normally gratifying way;
- A.A.'s behavioral changes since experiencing the 100-day separation from F.R.
- The damages suffered by F.R. and A.A., including whether F.R. has lost A.A.'s consortium.

Defendant's Statement

Plaintiffs' complaint alleges causes of action for negligence, intentional infliction of emotional distress, and loss of child's consortium. The United States maintains that the separation of F.R. and A.A. was undertaken pursuant to the execution of federal criminal and immigration laws, occurred prior to enactment of the "Zero-Tolerance Policy," and that the United States is immune from suit under the Federal Tort Claims Act. Additionally, the United States denies any negligence and maintains that A.A. was appropriately cared for while in the custody of ORR, and that he was reunited with his family in Honduras as soon as his immigration proceedings concluded. The United States denies that Plaintiffs sustained any temporary or permanent damages.

**4.   Jurisdictional basis for the case**

Plaintiffs assert that the Court has jurisdiction over this case under 28 U.S.C. §§ 1331, 1346(b). The United States maintains that the Court lacks subject matter jurisdiction over Plaintiffs' claims for the reasons asserted in its motion to dismiss.

**5.   Parties which have not been served**

All parties have been served.

**6.   Statement of whether any party expects to add additional parties or amend pleadings**

The parties do not expect to add parties or amend the pleadings at this time. Any necessary amendments will be made before the deadline provided in the Court's scheduling order, after seeking leave of Court as necessary. A deadline for amending the pleadings is proposed below.

**7.   Listing of contemplated motions**

Defendant anticipates moving for an independent psychological examination of A.A., and potentially of F.R.

**8.   Whether the case is suitable to reference to arbitration or a Magistrate Judge**

The parties do not consent to reference to a Magistrate Judge for trial. The parties agree that the case may be suitable for reference to a Magistrate Judge for a settlement conference at a later date. This case is not suitable for reference to arbitration.

**9.   Status of related cases**

The matters of *C.M. et al. v. United States*, No. 2:19-cv-05217-SRB ("*C.M.*"), *A.P.F. et al. v. United States*, No. 2:20-cv-00065-SRB ("*A.P.F.*") are pending before Judge Bolton. Judge Bolton denied Defendant's motion to dismiss in both cases. Those cases are currently in discovery.

The matter of *A.I.I.L. et al. v. United States*, No. CV-19-00481-TUC is pending before Judge John C. Hinderaker. On March 31, 2022, Judge Hinderaker denied the government's motion to dismiss.

**10. When the parties exchanged Federal Rule of Civil Procedure 26(a) initial disclosures**

The parties exchanged initial disclosures on April 18, 2022.

**11. Discussion of necessary discovery**

    **a)  Extent, nature, and location of anticipated discovery**

<u>Plaintiffs' statement</u>

Most of the information relevant to Plaintiffs' claims resides solely with government officials and in records maintained by the government. Plaintiffs anticipate that much of the policy-level information will mirror the documents and information produced in the *C.M.* and *A.P.F.* cases. The parties are in the process of discussing the ESI protocols and ESI search terms and custodians used in *C.M.* and *A.P.F.* Plaintiffs anticipate substantially adopting the protocols negotiated in those cases. Plaintiffs require document discovery and deposition testimony concerning the areas identified below.

    <u>Policy-Level Information</u>

- The creation, development, and implementation of the government's policy or practice of separating adults and minors at the Southern border of the United States since 2017 (the "Family Separation Policy"), including any pilot program related to the separation of families, and including the separation of families who crossed the border between ports of entry and families who lawfully presented at a port of entry.
- The purpose or intent of the Family Separation Policy, and the reasons underlying government officials' decision to implement the Family Separation Policy.

- Government officials' knowledge of potential or actual effects of the Family Separation Policy on individuals subject to the policy, including but not limited to government officials' knowledge that separating children from parents would cause emotional and psychological harm to separated parents and children; and concerns raised by government officials and others about the Family Separation Policy before and during implementation.
- The creation, development, and implementation of the government's so-called "zero-tolerance" policy implemented in 2018, and the relationship, if any, between the Family Separation Policy and the "zero-tolerance" policy.
- Government policies and practices concerning the care of individuals in immigration detention.
- The policies, directives, processes, procedures, and decision-making related to the referral of parents to the U.S. Department of Justice for prosecution pursuant to 18 U.S.C. § 1325.
- Government policies and practices concerning the care of children in the custody of the U.S. Office of Refugee Resettlement ("ORR"), including policies related to the government's determination of where to place children separated from their parents pursuant to the Family Separation Policy, and policies and practices of facilities and organizations that contracted with ORR and provided care for A.A.
- ORR's response to the implementation of the Family Separation Policy, including information regarding the number of children in ORR custody for the period of 2016 to 2019, and concerns raised by ORR officials and others concerning ORR's capacity to house children separated from their parents.
- Government policies and practices, if any, regarding communication between parents and children separated under the Family Separation Policy.

- Government policies and practices, if any, regarding the tracking of parents and children separated under the Family Separation Policy, including any inter-agency communication regarding separated families.
- Government policies and practices, if any, regarding the reunification of families separated under the Family Separation Policy.
- Government officials' actions and decisions, if any, to end the Family Separation Policy.

Plaintiff-Specific Information

- The circumstances surrounding Plaintiffs' entry into the United States.
- The circumstances of Plaintiffs' detention in government or government-contracted facilities, including the conditions of such facilities.
- Government officials' decisions concerning whether to prosecute F.R. under 8 U.S.C. § 1325 or any other statute.
- Government officials' decisions to separate Plaintiffs, and the circumstances of the separation, including the manner in which government officials separated Plaintiffs.
- Government officials' decisions of where to place A.A. following his separation from F.R., including the decision to place him in Texas.
- The manner in which government officials transferred A.A. to the children's shelter in Texas.
- Government officials' treatment of F.R. and A.A. during the course of their respective detentions.
- Government officials' knowledge of abuse suffered by A.A. during detention.
- Government officials' actions, if any, to track A.A. when he was separated from F.R.

- Government officials' actions, if any, to provide or prevent means of communication between F.R. and A.A.
- Government officials' actions, if any, to ensure that F.R. was not repatriated without A.A.
- Government officials' actions regarding the reunification of F.R. and A.A.
- Information concerning the physical, medical, psychological, and emotional harms suffered by A.A. and F.R. as a result of their separation, including any reports or assessments of the physical, mental, emotional, or psychological state of A.A. and F.R. while in the custody of the United States.
- Information concerning the retention, storage, and organization of Government records concerning each of the Plaintiffs.

Defendant's Statement

The United States believes that the policy-level discovery that has been and will be produced in the *C.M.* and *A.P.F.* matter is sufficient, and that Plaintiffs should not be permitted to require that the United States search for any additional policy-level documents. The United States further notes that the discovery sought by Plaintiffs may be subject to attorney-client privilege, work product protection, governmental privileges, including but not limited to the deliberative process privilege, law enforcement privilege, executive privilege, and other applicable privileges. Furthermore, insofar as Plaintiffs intend to seek discovery from current or former cabinet-level government officials, advisors to the President, or the President or former President, such discovery should not proceed unless and until Plaintiffs demonstrate the requisite heightened need for such discovery, and that such discovery cannot be obtained through some other source that is more convenient and less burdensome.

The United States requires documentary discovery and deposition testimony concerning the following subject areas:

- Information regarding Plaintiffs' entry(ies) into the United States and their apprehension(s);
- Information regarding the Plaintiffs' living conditions and economic circumstances in Honduras and the extent to which those circumstances contribute to the alleged physical, medical, mental, emotional and/or psychological harms experienced by Plaintiffs;
- Information regarding communications and other contacts between Plaintiffs during their separation, and information regarding A.A.'s communication and other contacts with his mother in Honduras from the time he left Honduras with F.R. until his repatriation in July 2018;
- Information regarding the alleged physical, medical, mental, emotional and/or psychological harms allegedly sustained by Plaintiffs as a result of their separations.

b) **Suggested changes to the discovery limitations imposed by the Federal Rules of Civil Procedure**

The parties do not currently anticipate a need to change the discovery limitations imposed by the Federal Rules of Civil Procedures. The parties are discussing the possibility of designating certain deposition transcripts from the *A.P.F.* and *C.M.* cases in this case to avoid duplicative depositions on policy-related issues. Plaintiffs' position is that if an agreement can be reached, an expansion of the number of depositions is not likely to be necessary.

c) **Number of hours permitted for each deposition**

The parties agree that each deposition of an adult witness shall be subject to the presumptive limit of one day of seven hours as provided in Fed. R. Civ. P. 30(d)(1). To the extent that there is coordination of depositions with the *C.M.* and *A.P.F.* cases, Plaintiffs may seek to extend the time limit for any coordinated depositions. To the extent that Defendant seeks to depose A.A., the parties will confer regarding appropriate limitations for this deposition.

- 10 -

**12.    Proposed deadlines**

The parties propose the following deadlines

    **a)**    **Completion of fact discovery**

May 5, 2023

    **b)**    **Expert disclosures under Fed. R. Civ. P. 26(a)(2)(A)–(D)**

Plaintiffs' expert disclosures: June 23, 2023

Defendant's expert disclosures: July 24, 2023

Rebuttal expert disclosures: August 23, 2023

    **c)**    **Completion of expert depositions**

October 27, 2023

    **d)**    **Filing of dispositive motions**

January 14, 2024

    **e)  Face-to-face good faith settlement talks**

May 5, 2023 (by the completion of fact discovery)

**13.    Whether a jury trial is requested**

Plaintiffs have not requested a jury trial as the FTCA provides that all actions shall be tried by the Court without a jury. 28 U.S.C. § 2402.

**14.    Prospects for settlement**

The parties believe that they will be able to assess prospects for settlement of the case after the completion of fact discovery.

**15.    Any other matters that will aid the Court in resolving the case**

None at this time.

RESPECTFULLY SUBMITTED this 2nd day of May, 2022.

RUKIN HYLAND & RIGGIN LLP

By: s/ *Valerie Brender*

Peter Rukin
Jessica Riggin
Valerie Brender

MITCHELL | STEIN | CAREY | CHAPMAN, PC

Kathleen E. Brody
Molly Brizgys

Attorneys for Plaintiffs

GARY M. RESTAINO
United States Attorney
District of Arizona

By: s/ *Katherine R. Branch (with permission)*

Katherine R. Branch
Assistant United States Attorney

Attorneys for Defendant