Kathleen E. Brody (026331)
kathy@mscclaw.com
Molly Brizgys (29216)
molly@mscclaw.com
MITHCELL | STEIN | CAREY | CHAPMAN, PC
One Renaissance Square
2 North Central Avenue, Suite 1450
Phoenix, AZ 85004
Telephone: (602) 358-0293
Facsimile: (602) 358-0291

Peter Rukin (SBN 178336)*
prukin@rukinhyland.com
Jessica Riggin (SBN 281712)*
jriggin@rukinhyland.com
Valerie Brender (SBN 298224)*
vbrender@rukinhyland.com
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

(*Admitted Pro hac vice)

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| F.R., on his own behalf and on behalf of his minor child, A.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. CV-21-00339-PHX-DLR <br><br> **PLAINTIFFS' SUPPLEMENTAL SUBMISSION RE ORAL ARGUMENT** |

At the Parties' June 24, 2022, oral argument on Defendant's Motion to Dismiss, the Court directed Plaintiffs to submit by email their response to the Court's Oral Argument Topics (Dkt. 59), Topic 1(a), which states:

> For each of your claims, please identify with specificity each individual federal employee whose conduct forms the basis that claim. If the identities of these employees are unknown, please identify them however you can (for example, by title or job description, date(s) of alleged tortious conduct, etc.) with corresponding citations to the paragraphs in the complaint that identify these individuals as the primary tortfeasors for whose actions you seek to hold the United States liable.

Plaintiffs identify the following individuals who were responsible for designing and carrying out the Family Separation Policy that harmed Plaintiffs. Plaintiffs believe that each of these individuals caused the harm that Plaintiffs suffered. While this harm was joint, cumulative, and pursuant to the Family Separation Policy originally designed by Jeff Sessions in concert with John Kelly, each of the individuals listed below acted individually. As such, Plaintiffs' separation and the harm they suffered was caused by each of the below individuals and the actions these officials chose to take. Plaintiffs believe that discovery will reveal the specific identity of the unknown individuals described below and have included footnotes where the Government's records, filed in conjunction with its motion to dismiss, appear to either specifically identify or substantially narrow the identity of the offending individuals.

## I. Intentional Infliction of Emotional Distress

Former United States Attorney General, Jeff Sessions, who devised the Family Separation Policy and directed subordinates to carry it out. *See* Complaint, ¶¶ 25-26 (describing the April 11, 2017, memorandum that Sessions issued that began the Family Separation Policy and its first widespread implementation in the El Paso sector; the DOJ OIG report, cited in footnotes 9-13, describes the rollout of this Policy in greater detail).

- 1 -

*See also id.* at ¶ 28 (describing Sessions' rollout of the Zero-Tolerance Policy, under which the majority of Plaintiffs' detention took place; *see also*, footnotes 14-19, which cite to the Health and Human Services OIG Report and the DOJ OIG report, which detail this rollout).

Former Secretary of Department of Homeland Security, and later President Trump's Chief of Staff, John Kelly, who acknowledged that the Family Separation Policy's stated intent was to deter migrants from coming to the United States. *See* Complaint, ¶ 30. *See also id.* at n. 26 (further describing Kelly's consideration of the Family Separation Policy as a deterrent while he was the Secretary of Homeland Security).

Unknown Customs and Border Protection officers who detained F.R. and A.A. on March 1, 2018[1] and placed them in "the icebox." *See* Complaint, ¶¶ 34-35. *See also id.* at n. 9 (noting that similar types of conditions have been enjoined by the United States District Court for the District of Arizona, citing *Doe v. Kelly*, 878 F.3d 710, 715–718 (9th Cir. 2017)).

An unknown Immigration and Customs Enforcement agent who forcibly separated F.R. and A.A. after 10-12 hours of detention in "the icebox." *See* Complaint, ¶ 37.

An unknown Customs and Border Protection Agent who was informed that F.R. had an aunt who lived in Washington, but who made no effort to place A.A. with this family member.[2] *See* Complaint, ¶ 38.

---

[1] This exact date is stated on the Government's submission of F.R. and A.A.'s Record of Deportable/Inadmissible Alien form in the possession of the Government. *See* Dkt. 30-1, Exhibits 1 (B) and (C). These forms also reflect that the Government likely knows the identities of the Customs and Border Protection agents who oversaw F.R. and A.A.'s initial detention, because the names of agents who interacted with F.R. and A.A. are redacted in this form.

[2] This is consistent with the Government's Exhibit (1) C (Dkt. 30-1), which reflects on page three that A.A. gave a Customs and Border Protection agent, whose name is redacted, his aunt's name, phone number, and location (Washington D.C.). Therefore, the Government appears to know the identity of the agent given this information.

1    Unknown Immigration and Customs Enforcement agents who oversaw F.R.'s
2 detention in early March of 2018 and who refused to provide him information about his
3 son. *See* Complaint, ¶ 40.[3]
4    Unknown Immigration and Customs Enforcement agents who oversaw F.R.'s
5 detention until April 4, 2018, and the officials at the shelter who oversaw A.A.'s contact
6 with his parents, both of whom limited calls between F.R. and A.A. *See* Complaint, ¶¶
7 41, 45.
8    Unknown woman at the children's shelter who locked A.A. in a room by himself
9 as punishment. *See* Complaint, ¶ 42.
10    Unknown Immigration and Customs Enforcement agents who deported F.R.
11 without A.A. on April 4, 2018,[4] and who led F.R. to believe that F.R. and A.A. were in
12 fact going to be deported together. *See* Complaint, ¶ 44.
13    Unknown officials who oversaw A.A.'s detention and who did not reunite F.R.
14 and A.A. for several months. *See* Complaint, ¶¶ 48, 55-56.

**II.    Negligence**

Plaintiffs believe that they will be able to show that the above-described government officials acted with malice. *See C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), *motion to certify appeal denied*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020) (recognizing an IIED claim in a family separation case where federal agents' actions were motivated by malice). However, if this Court were to find that the above-described government officials did not act with malice, Plaintiffs are prepared to prove that at a

---

[3] The Government's Exhibit 3, Dkt. 30-1, reflect that F.R. was transferred from U.S. Customs and Border Protection on March 6, 2018, to ICE's Florence Staging Facility on March 12, 2018. He was then transferred to ICE's Enforcement and Removal Operations on April 4, 2018.

[4] This exact date is from the Government's Exhibit 3, which reflects the date on which F.R. was removed to Honduras.

- 3 -

minimum they acted negligently in the separation of F.R. and A.A. *See id.* (also recognizing a negligence claim and finding that "Federal immigration officials, too, are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care.").

### III.  Loss of Child's Consortium

"Arizona law also awards damages for the loss of a child's consortium when a caretaker's actions cause "significant interference with the normal relationship between parent and child[.]" *A.P.F. v. United States,* 492 F. Supp. 3d 989, 995 (D. Ariz. 2020). Plaintiffs allege that the above-described officials also caused significant interference between F.R. and A.A., first by separating them pursuant to the Family Separation Policy and then by failing to place A.A. with his aunt, limiting communications between F.R. and A.A., removing F.R. to Honduras without A.A., and instead leaving A.A. in custody in the United States for several months. This has caused lasting harm to A.A. and caused significant interference with F.R.'s relationship with A.A., as described in Plaintiffs' complaint.

RESPECTFULLY SUBMITTED this 27th day of June, 2022.

RUKIN HYLAND & RIGGIN LLP

By:  */s/ Valerie Brender*
Peter Rukin
Jessica Riggin
Valerie Brender

MITCHELL | STEIN | CAREY | CHAPMAN, PC
Kathleen E. Brody
Molly Brizgys

Attorneys for Plaintiffs