GARY M. RESTAINO
United States Attorney
District of Arizona
THEO NICKERSON
Assistant United States Attorney
Connecticut State Bar No. 429356
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ 85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7760
Theo.Nickerson2@usdoj.gov
*Attorneys for United States of America*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| J.P., *et al.*, | No. CV-22-00683-MTL |
| Plaintiffs, | **UNITED STATES' RESPONSE TO PLAINTIFFS' MOTION TO TRANSFER** |
| v. | |
| United States of America, | |
| Defendant. | |

Defendant United States of America, through undersigned counsel, respectfully submits this memorandum responding to Plaintiffs' motion pursuant to Local Rule 42.1(a) to transfer this action to the Honorable Susan R. Bolton. Doc. 9. The United States takes no position on this motion and defers to this Court in managing its dockets with respect to family separation litigation in light of the large number of cases that could arise in this district. The United States identifies a few key points below that may be relevant to the Court's decision.

# BACKGROUND

### A. *J.P., et al. v. United States of America*

On April 25, 2022, Plaintiffs commenced this lawsuit against the United States under the Federal Tort Claims Act ("FTCA"). *See* Complaint, *J.P., et al. v. United States of America*, No. 2:22-cv-00683-MTL (D. Ariz. April 25, 2022), ECF No. 1, ("Compl."). According to the Complaint, Plaintiff J.P. and her then sixteen-year-old daughter, L.C., were apprehended by United States Customs and Border Protection ("CBP") after unlawfully crossing the border near San Luis, Arizona on May 16, 2018. Compl. ¶¶ 2-4, 14, 52. Plaintiffs allege that once apprehended, CBP transported Plaintiffs to a nearby CBP facility in Yuma, Arizona. *Id.* ¶¶ 4, 16, 54. Plaintiffs J.P. and her daughter L.C. further allege that they were separated at the CBP facility in Yuma, when J.P. was transferred to the custody of Immigration and Customs Enforcement ("ICE"), as was the practice at the time for noncitizens found to be in the United States in violation of 8 U.S.C. § 1325. Compl. ¶ 16, 71.

Plaintiffs allege that, while at the CBP facility, they were required to sleep on the floor in a windowless room without sufficient food and water and that J.P. was not provided with adequate information about L.C.'s whereabouts. Compl. at ¶¶ 69-78. They allege that J.P was eventually transferred to the James A. Musick Facility ("Musick Facility") in Irvine, California. *Id.* at ¶ 71. Accordingly, her daughter L.C. was transferred to an ORR facility—Southwest Key Casa, in Phoenix, Arizona. *Id.* at ¶ 65. Plaintiffs allege they were separated from approximately May 20, 2018, through July 16, 2018, for a total of eight weeks. *Id.* at ¶ 16.

Ultimately, J.P. was not prosecuted for violating § 1325 but was placed in removal proceedings. Compl. ¶ 72. On July 13, 2018, Plaintiff J.P was ordered released by an immigration judge on $1500 bond and three days later, on July 16, 2018, J.P. was released from ICE custody. *Id.* at ¶ 80. On the same date, ORR released L.C. from Southwest Key Casa in Phoenix and facilitated her flight to Burbank, CA to reunite with her mother. *Id.* J.P. and L.C. then moved to Florida where they continue to reside and pursue asylum claims. *Id.* at ¶ 84.

Plaintiffs assert four causes of action against the United States under the FTCA. Compl. at ¶¶ 90-104.  First, Plaintiffs seek to recover money damages for the alleged intentional infliction of emotional distress caused by the United States. *Id.* at ¶¶ 90-92. Plaintiffs claim the United States is liable for its "extreme and outrageous conduct with an intent to cause, or a reckless disregard of the probability of causing, Plaintiffs to suffer severe emotional distress." *Id.* at ¶ 90.  Second, Plaintiffs seek compensatory damages to redress the alleged negligence of the United States, asserting that by separating the Plaintiffs it "failed to act with ordinary care and breached [its] duty of care owed to Plaintiffs." *Id.* at ¶¶ 93-96.  Third, Plaintiff's assert a cause of action for abuse of process, claiming that "the U.S. Government used its immigration detention authority which is incident to the judicial process of removal proceedings for the improper ulterior motive of separating families such as Plaintiffs to generate publicity, and for the improper ulterior motive of deterring Plaintiffs from asserting their rights under U.S. and international law to seek asylum in the United States." *Id.* at ¶ 98.  Finally, the Plaintiffs seek to recover under the FTCA for loss of consortium, stating that "the U.S. Government's negligence, which prevented families from communicating and slowed their reunification, also deprived Plaintiffs of the ability to seek comfort in each other." *Id.* at ¶¶ 100-104.

### B. *C.M., et al. v. United States of America*

The plaintiffs in *C.M.* are five mothers, who sued on behalf of themselves and their respective five minor children, alleging that they were separated from their children after crossing into the United States in Arizona, in May 2018, and taken to a Border Patrol station in Arizona. *See* Complaint at ¶¶ 71, 119, 121, 171-72, 236, 305, *C.M., et al. v. United States of America*, No. 2:19-cv-05217-SRB (D. Ariz. Filed Sept. 9, 2019), ECF No. 1 ("*C.M.* Compl."). The *C.M.* plaintiffs allegedly were then sent to different secure detention facilities in Arizona (*C.M.* Compl. at ¶¶ 86, 89, 137-138, 194, 256, 273, 331); Nevada (*id.* at ¶¶ 258, 339); and California (*id.* at ¶¶ 140-141). The *C.M.* plaintiffs' children were then placed in various and different care facilities by ORR, including facilities in New York (*id.* at ¶¶ 100, 211, 281, 355) and Arizona (*id.* at ¶ 152). The *C.M.*

plaintiffs and their children were reunited at the South Texas Family Residential Center in Dilley, Texas. (*See C.M.* Compl. at ¶¶ 112, 166-68, 230, 232, 371, 376-80.)

### C. *A.P.F., et al. v. United States of America*

The plaintiffs in *A.P.F.* are six alien fathers, who sue on behalf of themselves and their respective six minor children, alleging that they were separated from their children after crossing into the United States in Arizona, where they were encountered by CBP agents and taken into custody. *See* Amended Complaint at ¶¶ 86-91, 113, 182, 193, 203, 265-266, 273, 308-309, 317, 369-371, 377, 413, 418, 424, *A.P.F., et al. v. United States of America*, No. 2:20-cv-00065-SRB (D. Ariz. Filed June 16, 2020), ECF No. 34 ("*A.P.F.* Am. Compl."). The *A.P.F.* plaintiffs were then transferred to the custody of ICE and allegedly sent to different secure detention facilities in Arizona, Georgia, and Texas (*id.* at ¶¶ 32-43, 122, 210-215, 277-281, 293.) The *A.P.F.* plaintiffs' children were placed in various and different care facilities by ORR, including facilities in New York, Texas, and Michigan (*id.* at ¶¶ 32-43). The *A.P.F.* plaintiffs and their children were later reunited after separation periods allegedly spanning from eight weeks to more than eight months (*id.* at ¶¶ 32, 34, 36, 39, 41, 43).

## LEGAL STANDARD

As relevant here, L.R.Civ. 42.1(a) provides that a party may move to transfer two or more different cases to a single judge when the party believes that the cases (1) "arise from substantially the same transaction or event;" (2) "involve substantially the same parties or property;" (3) "call for determination of substantially the same questions of law;" or (4) "for any other reason would entail substantial duplication of labor if heard by different Judges." When considering a motion under L.R.Civ. 42.1(a), "[a] principal factor is whether party economy or judicial economy is substantially served by transfer to another judge." *Cagle v. Ryan*, No. CV-16-03912-PHX-JAT-JFM, 2018 WL 2688775, at *1 (D. Ariz. June 5, 2018) (internal quotations omitted).

These factors "are not binding on the Court's ultimate decision to grant or deny the motion." *Smith v. Sperling*, No. 11-0722-PHX-PGR, 2011 WL 4101508, at *1 (D. Ariz. Sept. 14, 2011). Rather, the Court retains "broad discretion regarding the assignment or reassignment of cases." *See Badea v. Cox*, 931 F.2d 573, 575 (9th Cir.

1991) (internal citation and quotations omitted); *Dishon v. Gorham*, No. CV-16-04069-PHX-ROS, 2018 WL 4257936, at *4 (D. Ariz. Sept. 6, 2018).

## ARGUMENT

The United States takes no position on the pending motion and defers to the Court on its application of the L.R.Civ. 42.1(a) factors but discusses below some relevant aspects of the application of these factors for the Court's consideration.

**1. Transaction or Event**

This case, like *C.M.* and *A.P.F.*, involves claims of family separation, but there are also substantial factual differences between the cases with respect to the circumstances of separation and the allegations concerning the custody of the parent and child in this case. In each case, the separation resulted from an individual enforcement action by specific federal immigration agents implementing some combination of the larger policies at issue and individual discretion. As a result, Plaintiff J.P. and her daughter L.C. followed a different path of detention and child placement than the groups of plaintiffs in *C.M.* and *A.P.F.* Plaintiffs in this case, therefore, make allegations concerning their separation, and the exact facilities in which they were housed, that are factually distinct from the plaintiffs in *C.M.* and *A.P.F.*

For example, Plaintiff J.P. alleges that she was detained at James A. Musick Facility in Irvine, California ("Musick Facility"). Compl. at ¶ 71. J.P further alleges that at the Musick Facility in Irvine, she was not provided with an interpreter or provided with information about her daughter L.C. in a language she could understand. *Id.* at ¶¶ 73-75. She also alleges that staff at the Musick Facility failed to facilitate communication with her daughter and that she was subject to verbal abuse by the Musick facility's staff. *Id.* at ¶ 75. Although one of the plaintiffs in *C.M.* (Plaintiff L.G.) was detained at the Musick Facility, none of the plaintiffs in *C.M.* challenge conditions at the Musick Facility, as Plaintiff J.P. does here. Further, none of the *A.P.F.* plaintiffs were detained at the Musick Facility in Irvine, California. Therefore, unlike in this case, the conditions at the Musick Facility are not relevant to *C.M.* or *A.P.F.* Likewise, none of the children in *C.M.* or *A.P.F.* were placed in the Southwest Key Casa ORR facility in Phoenix, Arizona, and the facts alleged in this case relating to this facility are not relevant to either *C.M.* or *A.P.F.*

(*See A.P.F.* Am. Compl. at ¶¶ 32-43, 122, 210-215, 277-281, 293;*C.M.* Compl. at ¶¶ 18-19.)  Unlike *A.P.F.*, this case does not involve allegations of abuse at an ORR facility in New York. (*A.P.F.* Am. Compl. at ¶¶ 93-95, 139-141, 279, 454.)

Further factually unique to this case are Plaintiffs' allegations that CBP's forcible separation of L.C. from J.P. physically injured L.C.  Compl. at ¶ 61.  Plaintiffs allege that while being pulled from her mother, L.C. fainted and fell onto the concrete floor, injuring her face and causing bleeding.  *Id*.  Plaintiffs further allege that this injury led L.C. to experience great pain and difficulty eating and ultimately led to her diagnosis with a bacterial skin infection and an upper respiratory infection while at Southwest Key Casa.  *Id.* at 66, 87.  None of the plaintiffs in *C.M.* and *A.P.F.* allege physical injury from a forcible separation.  *C.M.* Compl.; *A.P.F.* Am. Compl.

The United States defers to the Court on this factor, but the fact that family members were separated because of the government's enforcement of nationwide federal immigration policies might not imply that all instances of family separation "arise from substantially the same transaction or event" or warrant transferring all cases to a single district court judge, particularly where, as here, there are key factual distinctions between the cases. *See K.O. v. U.S. Immigr. & Customs Enf't*, 468 F. Supp. 3d 350, 361 n.1 (D.D.C. 2020) (declining to transfer a family separation case and explaining that, while the cases involve "some common issues of fact, those facts concern nationwide government policies that could be shared between any number of cases").

**2. Parties or Property**

This case and the *C.M.* and *A.P.F.* cases involve a common defendant, the United States.  But they obviously involve different plaintiffs.  The United States as common defendant may be insufficient to meet L.R.Civ. 42.1(a)'s prong requiring "substantially the same parties." *See Pangerl v. Ehrlich*, No. CV06-1464 PHXMHM, 2007 WL 686703, at *3 (D. Ariz. Mar. 2, 2007) (finding commonality of government defendants did not support transfer where "the [p]laintiffs in both cases [were] distinct").  These cases do not involve common property.

### 3. Questions of Law

This case and the *C.M.* and *A.P.F.* cases present similar state law causes of action and similar legal defenses under the FTCA, including whether a court has subject matter jurisdiction over a plaintiff's challenge to the government's enforcement of federal immigration law. But Plaintiffs' FTCA claims for negligence, intentional infliction of emotional distress, and loss of child consortium also implicate individualized facts— including the actions of specific federal agents in applying those national policies, the actions of officers who encountered Plaintiff J.P. during her detention, and the actions of the specific ORR employees who encountered Plaintiff's daughter L.C. during her periods of ORR custody after separation. As Judge Bolton noted in *A.P.F.*, "whether the government intentionally inflicted emotional distress, acted negligently, or caused the loss of a child's consortium . . . will turn on events occurring after [Plaintiffs] entered the country—namely, the government's treatment of [Plaintiffs] at and after the time of separation." *A.P.F.*, No. 2:20-cv-00065-SRB, ECF No. 33 at 4.

Transfer may not be appropriate where there are substantial factual differences between the cases, even if "there may be some overlap in at least one of the legal issues." *Lexington Ins. Co. v. Scott Homes Multifamily, Inc.,* No. CV-12-02119-PHX-JAT, 2013 WL 4026883, at *2 (D. Ariz. Aug. 7, 2013; *Lopez v. I-Flow Inc.,* No. CV-08-1063-PHX-SRB, 2009 WL 5574373, at *3 (D. Ariz. May 8, 2009); *Cooke v. Town of Colorado City, Ariz.,* No. CV 10-08105-PCT-JAT, 2012 WL 5835401, at *2 (D. Ariz. Nov. 16, 2012). For example, in *Lopez v. I-Flow Inc.*, the court declined to transfer a case that involved the same "legal defenses" and the "same causes of action" as an ostensibly related case, holding that "factual differences"—each plaintiff's individual "medical history" and "alleged damages"—will "result in different legal analysis and individualized issues related to liability and causation." *See Lopez*, 2009 WL 5574373, at *3.

Judge Bolton recently declined to transfer or consolidate another family separation case pending in this District, *B.A.D.J. v. United States of America*, with *C.M.* and *A.P.F.* *See B.A.D.J.*, No. 2:21-cv-00215-SMB, ECF 48. In doing so, Judge Bolton noted that although family separation cases involve similar causes of action, share a common defendant, and arise generally from the same event, "the specific facts surrounding the

separations and alleged mistreatment that occurred in each case are unique." *Id.* at p. 3 (citing *Lopez*, 2009 WL 5574373, at *3 (declining transfer due to individual factual circumstances requiring different legal analysis)). Finally, as Judge Bolton noted in declining to transfer *B.A.D.J.*, the United States asserted legal arguments in its motion to dismiss in *B.A.D.J.* that had not been addressed by the Court's orders on the United States' motions to dismiss in *C.M.* and *A.P.F. Id.* at p. 4. Likewise, here, the United States asserts legal arguments in its recently filed motion to dismiss in this case that were not addressed in Judge Bolton's orders on the United States' motions to dismiss in *C.M.* and *A.P.F. Compare* Doc. 15 with *C.M.*, No. 2:19-cv-05217-SRB, ECF 31 and *A.P.F.*, No. 2:20-cv-00065-SRB, ECF 36.

### 4. Judicial Economy

The United States defers to the Court on whether Plaintiffs' requested transfer is likely to serve judicial economy or conserve judicial resources. Importantly, there have been twenty-three FTCA cases filed in federal courts across the nation addressing the impact of these policies on individuals, and there are nearly 800 tort claims pending before federal agencies, many of which stem from separations that occurred in Arizona. The Court may want to consider this larger picture in determining how to manage those cases being filed in the District of Arizona.

Consolidation at the appropriate time might increase efficiency. At the same time, the Court could conclude that it would not serve judicial economy to transfer every such case to be handled by a single judge and that, rather, "a division of labor between" Judges in this District could be "more conducive to judicial economy than would transfer to a single Judge." *S.E.C. v. Fraser*, No. CR-09-00365-PHX-FJM, 2009 WL 1327756, at *2 (D. Ariz. May 13, 2009) (declining to transfer civil case).

In addition, Courts regularly consider whether cases are at different stages in litigation in deciding whether to transfer. *See, e.g., Cooke*, 2012 WL 5835401, at *2; *Toomey v. Arizona*, No. CV 20-0335-TUC-SHR, 2020 WL 6149843, at *2 (D. Ariz. Oct. 20, 2020). One illustrative example is *Cooke*, where the court denied a transfer motion, despite finding that the cases "shar[ed] common legal issues concerning violations of the Fair Housing Act" and "generally ar[ose] from the same transactions or events." *Cooke*,

2012 WL 5835401, at *2. Among other things, the court found transfer to be inappropriate because the cases were "at very different stages of litigation," one being "at the summary judgment stage" and the other "just recently filed." *Id.*

Similarly, in Judge Bolton's recent decision declining to transfer *B.A.D.J.*, she found it relevant that the *C.M.* and *A.P.F.* cases are both past the motion to dismiss stage, the United States has filed an answer in both cases, and those cases are well into the discovery process with depositions having commenced—whereas *B.A.D.J.* was in the early pleading stages. *See B.A.D.J.*, No. 2:21-cv-00215-SMB, ECF 48. The Court could hold similarly here, as this case is likewise in its early pleading stages with the United States just recently filing its motion to dismiss. Doc. 15. Moreover, there also are benefits to having similar legal issues considered by different judges, as the Supreme Court has recognized. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984) ("[T]he government is often involved in litigating issues of national significance where conservation of judicial resources is less important than 'getting a second opinion[.]'").

Finally, in their motion to transfer, Plaintiffs point out that the United States has moved for Consolidated National-Level Policy-Based Discovery in *C.M.* and *A.P.F.* Doc. 9 at p. 2-3. From this, Plaintiffs infer that the United States has recognized that it would be more efficient to handle all family separation cases together before a single judge in this District. *Id.* In fact, the United States does ***not*** seek to burden a single judge with the entirety of these (and any forthcoming) cases arising from separations of families at the United States-Mexico border. Rather, the United States has proposed a mechanism to streamline policy-related discovery issues common to all such cases while allowing the district court judges assigned to each case to retain control over all other matters, including discovery related to the individual plaintiffs as well as all dispositive issues in each action. It is only the common, and overlapping, discovery with respect to the national, policy-related decision making of senior government officials, as well as the implementation of those policies by officials and employees with the Border Patrol Sectors, ICE Field Offices, and U.S. Attorney's Offices, that the United States believes would be best handled by a single judicial officer. Under Rule 42(a), district courts "may consolidate cases for purposes of discovery and pre-trial proceedings only." *Chelsea,*

*LLC v. Regal Stone, Ltd.,* No. 07-5800 SC, 2009 WL 250479, at *2 (N.D. Cal. Feb. 3, 2009); *Disc. Bank & Tr. Co. v. Salomon Inc.,* 141 F.R.D. 42, 43 (S.D.N.Y. 1992) ("Rule 42(a) empowers this Court to order consolidation of these actions for pretrial purposes.") (citing *MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958). Therefore, should the Court deny the United States' motion to dismiss in this case, the United States, like Plaintiffs, is open to the concept of consolidated discovery for the limited purpose of the national-level policy decisions challenged in this case.

### CONCLUSION

Ultimately, the factors set forth in L.R.Civ. 42.1(a) "are not binding on the Court's ultimate decision to grant or deny" Plaintiff's motion, *Smith*, 2011 WL 4101508, at *1, as the Court retains "broad" discretion regarding the reassignment of cases, *Dishon*, 2018 WL4257936, at *4. For the reasons set forth above, the United States defers to the Court on the transfer decision.

Respectfully submitted this 7th day of July, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Theo Nickerson*
THEO NICKERSON
Assistant United States Attorney
*Attorneys for United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Daniel B. Pasternak (SBN 023751)
SQUIRE PATTON BOGGS (US) LLP
2325 East Camelback Road, Suite 700
Phoenix, AZ 85016
daniel.pasternak@squirepb.com

Manuel F. Cachán*
William C. Rose*
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
mcachan@proskauer.com
wrose@proskauer.com

Hena M. Vora*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
hvora@proskauer.com

Sara Van Hofwegen*
Joel Frost-Tift*
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
svanhofwegen@publiccounsel.org
jfrost-tift@publiccounsel.org

*Attorneys for Plaintiffs*

*s/ Theo Nickerson*
U.S. Attorney's Office